195 So.2d 105

Jeanne D. MULTER

v.

Robert N. MULTER.

4 Div. 226.

Supreme Court of Alabama.

Dec. 8, 1966.

Rehearing Denied Feb. 23, 1967.

Ben H. Lightfoot, Luverne, for appellee.

Warren S. Reese, Jr., Montgomery, for appellant.

GOODWYN, Justice.

Appellant, Jeanne D. Multer, on January 31, 1963, filed in the Law and Equity Court of Crenshaw County a bill in the nature of a bill of review seeking to have set aside a January 11, 1961, decree of said court divorcing her and appellee, Robert N. Multer, from the bonds of matrimony. After an oral hearing of the evidence, a decree was rendered denying the relief sought and dismissing the bill. This appeal is from that decree.

Our conclusion is that the decree is due to be affirmed.

As bases for relief, the bill alleges fraud as to the residence of both parties, fraud in obtaining appellant's answer and waiver in the divorce suit, insufficient grounds for divorce in the original bill, and an ineffective power of attorney purportedly appointing an attorney to represent complainant in the divorce suit.

Mrs. Multer and the attorney who represented her in the divorce suit were the only witnesses. Mr. Multer was not present at the hearing, but was represented by counsel.

The substance of Mrs. Multer's testimony is as follows: She and her husband were residents of New York and were separated in October, 1960. At that time she took over the money in their joint savings and checking accounts, approximately $300, and used it to live on for the next couple of months. On December 15, 1960, Mr. Multer told her he was going to Alabama to establish residence to enable him to get a divorce from bed and board. He asked her to sign a separation agreement and an answer and waiver, which she did. The separation agreement contains this provision: "11. The provisions of this agreement shall not be construed to prevent either party from suing for an absolute or limited divorce in this or any other competent jurisdiction upon such grounds as they shall elect or as they may be advised; * * *." According to her understanding, these documents were to be used in the proceeding for a divorce from bed and board. She also signed an instrument, dated December 15, 1960, and notarized under the same date, appointing in blank an attorney to represent her "in an action for divorce in any court in the State of Alabama, which action has been or will be instituted by my spouse." She does not remember when she signed this. All of these documents were used in the divorce proceeding in Alabama the following month. The power of attorney, admitted in evidence, shows the appointment of A. L. Turner as Mrs. Multer's attorney. She denies authorizing any attorney to act for her in the divorce proceeding.

Mrs. Multer does not know, of her own knowledge, when Mr. Multer came to Alabama, although he told her, when they talked in January, that he had already been to Alabama and had spent one day there. She says she had never been to Alabama prior to the issuance of the divorce decree.

Mrs. Multer admits receiving a copy of the Alabama divorce decree in January, 1961, but says she did not read it, only glanced at it, and thought it was a decree of divorce from bed and board.

Under the terms of the separation agreement Mrs. Multer was to receive $2,000 from the sale of their jointly owned home. She admits signing a receipt for this money but says she never received it.

Mrs. Multer moved to Minnesota in May, 1961. She says she did not find out the

true nature of the proceeding in Alabama until "after April of '62." However, she admits Mr. Multer told her, in a conversation she had with him in May of 1961, that he had remarried. She says that she learned definitely that he had remarried and had a child by this subsequent marriage, during a trip to New York in April, 1962. The proceeding now before us was filed on January 31, 1963, a little more than two years after the divorce was granted and about a year and eight months after Mr. Multer told Mrs. Multer of his remarriage.

Several of Mrs. Multer's federal and Minnesota income tax returns were introduced in evidence. Her 1961 federal return, dated April 11, 1962, indicated her marital status at that time as "single." The Minnesota return for the same year, and dated the same date, likewise indicated her marital status as "single."

Mrs. Multer was questioned as to her reasons for seeking to have the divorce set aside:

"Q. Why did you decide you wanted to set it aside, Mrs. Multer?

"A. Well, I contacted an attorney in St. Paul as to what I felt was a fraud or the cheating or lying that Mr. Multer had done in order to get out of paying me the $2000.00, and talking with the attorney he felt that the best thing to do was to bring it down to Alabama.

    *     *     *     *     *     *

"Q. When was that you conferred with the attorney?

"A. Well, probably the end of April or around the 1st of May in '62.

    *     *     *     *     *     *

"A. Basically the fact that I wanted to have the divorce set aside was that I was told this was the only way I could hope to recovery [sic] whatever money was due me.

    *     *     *     *     *     *

"Q. * * * [T]ell the Court why you filed the bill to set the divorce aside, in your own words.

"A. Well, after determining all these facts, which I wasn't aware of, and that it was a final divorce, I felt that it wasn't fair or equitable, or just in my behalf, it was my understanding that a wife was entitled to certain benefits, benefits anyway, and in my way of thinking, I hadn't received them."

Mrs. Multer has a high school education and has worked as a bookkeeper and secretary.

Assuming the Alabama court was without jurisdiction to grant the divorce of January 11, 1961, it does not follow as a matter of course that Mrs. Multer is entitled to the relief she seeks. Our conclusion is that, under the facts and circumstances of this case, the equitable doctrine of laches operates to deny her relief. Whether there might be some additional reason for denying her relief, there is no need to determine.

The following from 27 Am.Jur.2d, Equity, § 152, p. 687, is an adequate definition of laches:

" * * * The doctrine of laches may be defined generally as a rule of equity by which equitable relief is denied to one who has been guilty of unconscionable delay, as shown by surrounding facts and circumstances, in seeking that relief. 'Laches' has been defined as such neglect or omission to assert a right, taken in conjunction with lapse of time and other circumstances causing prejudice to an adverse party, as will operate as a bar in equity."

In support of our conclusion, we point out the following facts and circumstances:

By signing the answer and waiver filed in the divorce proceeding, Mrs. Multer became a party to the fraud which she contends was perpetrated on the Alabama court. This is true despite her protests that she was misled as to the true nature of the Alabama proceeding. There is no showing of coercion or undue pressure having been used to force her to sign those documents.

Had the suit been for the purpose of obtaining a divorce a mensa et thoro rather than a vinculo matrimonii, her representations as to residency would have been no less fraudulent. She admits receiving a copy of the divorce decree in January 1961, but, because she did not read it, argues that she still had no notice that a divorce a vinculo had been granted to her husband. Nevertheless, taking her statement in good faith, she next admits that she was told by her husband of his remarriage in May, 1961 (a year and a half prior to her taking action to set aside the divorce decree), but she "didn't believe it." Common sense would dictate that, under such circumstances, one in a similar situation would take steps to ascertain her true marital status at that time—steps which would certainly include a thorough examination of the document previously thought to be a "divorce from bed and board." Still, Mrs. Multer claims she did not learn of Mr. Multer's remarriage until a trip to New York in April, 1962 (nine months before filing the suit to set aside the divorce decree), when she discovered that a child had been born of his subsequent marriage. Such explanation is difficult of belief, particularly when her income tax returns show she considered her marital status as "single" during the tax year of 1961.

From Mrs. Multer's own statements, her motivation in bringing this suit seems to be a step toward obtaining the $2,000 she was to receive under the separation agreement, but which she claims has not been paid to her. As already noted, she admitted signing a receipt for this money.

■ Mrs. Multer relies on Hartigan v. Hartigan, 272 Ala. 67, 128 So.2d 725, in support of her contention that the divorce should be set aside for lack of jurisdiction. That case is not authority for the proposition that all divorces will be set aside on the ground of "no jurisdiction." Cf: Shapiro v. Shapiro, 280 Ala. 115, 190 So.2d 548; Lutsky v. Lutsky, 279 Ala. 185, 183 So.2d 782; Levine v. Levine, 262 Ala. 491, 80 So.2d 235. Other factors will be considered, such as benefits received by the party seeking to set aside the divorce, the nature of the petitioning party's participation in the divorce action, and the diligence of such party. Also, the present position of the parties will be considered; for instance, whether setting aside the divorce will bastardize children of a subsequent marriage of a party. While it is true that the mere presence of children will not always prevent setting aside a void divorce (Hartigan v. Hartigan, supra), still, the fact that children have been born of a subsequent marriage of a party will be considered in cases of this nature and will be treated as a weighty factor in determining the disposition of such cases.

The evidence indicates that Mr. Multer has remarried and has children of that marriage. Prompt action by Mrs. Multer upon receiving a copy of the divorce decree in January, 1961, certainly would have placed her in a more favorable position than she finds herself in this proceeding. But instead of making a move for relief, she stood by without action for more than two years and now seeks to enforce a claimed right which, if permitted, would irrevocably damage and complicate the lives of innocent persons.

■ "Laches is not fixed by a hard and fast limit of time, but is a principle of good conscience dependent on the facts of each case." See: Woods v. Sanders, 247 Ala. 492, 496, 25 So.2d 141, 144; Merrill v. Merrill, 260 Ala. 408, 411, 71 So.2d 44. Under the facts of this case, we think Mrs. Multer was guilty of laches.

■ The following from the recent case of Lutsky v. Lutsky, 279 Ala. 185, 183 So.2d 782, supra, is equally applicable here:

"Having been apprised of the divorce soon after it was granted, knowing at the time she filed her answer that her husband was not domiciled in Alabama,

we do not think appellant acted with due diligence to vacate the divorce decree. It is a familiar principle, aside from statutes of limitation, that courts of equity will discourage laches and delay in enforcement of rights; that is to say, nothing can call forth the court of chancery into activity but conscience, good faith and reasonable diligence. Meeks v. Miller, 214 Ala. 684, 108 So. 864. We do not think that appellant was actuated by conscience, good faith or reasonable diligence in the instant case. The trial court was free from error in denying relief."

Appellant argues that Equity Rule 66, Code 1940, Tit. 7, Appendix, p. 1099 (unofficial Recompiled Code 1958, Tit. 7, Appendix, p. 1276), allows a bill in the nature of a bill of review to be filed within three years after rendition of the decree sought to be vacated, and, therefore, laches is no bar to this suit. While this rule, by its terms, applies to "bills of review," it has been held to apply, by analogy, to bills in the nature of bills of review. See: Tarlton v. Tarlton, 262 Ala. 67, 77 So.2d 347; Urquhart v. McDonald, 252 Ala. 505, 42 So.2d 9. In effect, appellant's contention is that Rule 66 operates as a statute of limitations, giving her an irrevocable right to file her bill within the three year period and, if filed within that time, laches cannot be a bar to the suit. It has been held, however, that "a court of equity may refuse relief by applying the doctrine of laches even though the claim be not barred by the statute of limitations." See: Mc-Cary v. Robinson, 272 Ala. 123, 127, 130 So.2d 25, 29. To like effect is Gayle v. Pennington, 185 Ala. 53, 68, 64 So. 572, 577, where it was said:

> "Laches is not like limitations, a mere matter of time, but principally a question of inequity of permitting a claim to be enforced, and, when this inequity exists, a court will refuse relief, although the time which has elapsed since the alleged injury is less than that which is made a bar by the statute of limitations. * * *"

The decree appealed from is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, J., concur.

COLEMAN, J., concurs in the result.

COLEMAN, Justice (concurring specially).

I concur in the holding that the decree appealed from is due to be affirmed. I do not wish to be understood as concurring in the statements in the opinion as to why the holding in *Hartigan* does not apply here.