243 So.2d 507

**Morris REISS**

**v.**

**Ethel REISS.**

**6 Div. 51.**

Court of Civil Appeals of Alabama.

Nov. 18, 1970.

Rehearing Denied Dec. 10, 1970

F. Raymond Ingram, Victor H. Smith, Birmingham, for appellant.

Ethel Reiss, pro se.

THAGARD, Presiding Judge.

"Oh what a tangled web we weave,
When first we practice to deceive."

Sir Walter Scott

The appellee in this case, Mrs. Ethel Reiss, flew to Jefferson County, Alabama, from her home in New York on June 11, 1958, and wove for herself a tangled web by going to some office in Birmingham the next day and signing a deposition that she and her husband were bona fide resident citizens of the State of Alabama and thereby obtaining a divorce from the bonds of matrimony on the ground of statutory cruelty.

More than ten years later she again flew from her New York home to Winston County, Alabama, and sought to untangle the web which she had woven by filing a bill in the nature of a bill of review alleging that she and her husband were residents of New York and not of Alabama when the divorce was obtained and praying the court to give her an assist in the untangling by setting aside and annulling the divorce decree that had been rendered some ten years and one month earlier.

Later she filed an amendment to the original bill alleging that she and her husband had entered into a written separation agreement prior to filing for the divorce.

She alleged that she entered into the separation agreement and signed the deposition in the divorce proceeding because of duress, coercion, and fraud on the part of her husband.

A motion to strike and demurrers to the original bill and the amended bill were filed by respondent but as far as the record shows they were never presented to or acted upon by the court; and respondent later waived the same by filing an answer without reserving the right to have the motion to strike and demurrers ruled upon.

The testimony was taken orally before the court and the cause submitted, and the Honorable Bob Moore, Jr., trial judge, rendered a decree dated April 4, 1969, declaring the divorce decree that he had rendered on June 12, 1958, null and void and setting the same aside, and ordering the respondent, Morris Reiss, to pay Bill Fite, solicitor for complainant, the sum of $750.00 for his services to complainant.

On May 1, 1969, respondent filed an appeal bond with a bonding company as surety, which was taken and approved by the register on the day filed.

On June 27, 1969, the trial judge, ex mero motu and without notice to either party, rendered what purported to be an amendment to the final decree dated April 4, 1969, awarding additional relief by declaring void the separation agreement executed by the parties on May 14, 1958. The respondent, on July 25, 1969, filed a motion for a rehearing on the "Amendment to Decree" dated June 27, 1969, which motion was denied by the trial court by a decree, dated September 5, 1969.

Subsequently, on September 26, 1969, the trial court, ex mero motu and without notice to the parties, rendered another decree undertaking to clairify the earlier decrees by setting aside and declaring for naught "any and all agreements between the parties heretofore incorporated in any decree of this court by reference or otherwise * * *." Then on October 30, 1969, the trial court rendered another decree amending and expanding the decree dated September 5, 1969, by denying respondent's motion for a rehearing on the decree dated June 27, 1969.

On November 19, 1969, the trial court, again ex mero motu and without notice, rendered a "final once and for all" decree, undertaking to vacate the decrees dated September 5, 1969, and September 26, 1969, undertaking to explain the purposes and effects of the decree dated October 30, 1969, and again annulling the divorce decree rendered on June 12, 1958, and the separation agreement therein embraced.

On December 18, 1969, the respondent perfected an appeal to this court from the decrees dated June 27, 1969, October 30, 1969, and November 19, 1969, by filing an appeal bond which was taken and approved by the register on the date of its filing.

On December 23, 1969, the Honorable Bill Fite accepted service of a citation of an appeal "to the Supreme Court of Alabama from the decrees heretofore rendered in the above stated cause by the Circuit Court of Winston County, Alabama; and waived "any and all further notices of said appeal", and consented "that said cause may be submitted at any time without further notice to the undersigned."

On March 13, 1970, the respondent filed an application that, if this court should find that the decrees or amendments to decrees dated June 27, 1969, and November 19, 1969, are void and not subject to review by appeal, we grant an alternative writ of mandamus directed to the trial judge requiring him by appropriate order or decree to vacate and annul said void decrees.

The appellee, on July 17, 1970, filed a motion to dismiss the appeals of appellant on grounds that the security for costs from the April 4, 1969, decree was not properly filed because of the absence of the power of attorney to the purported attorney-in-fact; further, that no citation of appeal was issued to and served upon appellee; and, finally, that the appellant took the position in a proceeding in a New York court that the Winston County, Alabama, court had set aside the divorce decree and that the parties were husband and wife, and that the position taken by him was a fraud on the New York court and on this court and that he should now be estopped to take a position different from that taken by him in the New York court.

The only statutory requirement that we find pertaining to an appeal bond is that it be approved by the clerk or register or the court. Title 7, § 766(b), 1940 Code of Alabama. The record shows that the appeal bond from the decrees dated December 4, 1968, and April 4, 1969, was taken and approved by the register on May 1, 1969.

The mere act of filing an appeal bond within the time limit fixed by law is the event which effects an appeal and notice of the appeal need not be given within the six months period allowed by law for taking an appeal. Maya Corporation v. Smith, 239 Ala. 470, 196 So. 125.

In Blalock v. Johnson, 270 Ala. 654, 656, 657, 121 So.2d 604, 605, the Supreme Court said:

"After the motion to dismiss was filed a supplemental transcript was brought to this court showing belated compliance with the deficiencies pointed out in the grounds of the motion to dismiss presently under consideration. The supplemental transcript was filed several weeks before the cause was ready for submission on briefs. Under the recent decisions of this court the grounds of the motion to dismiss the appeal presently under consideration must be overruled. Benson-Jackson-Mathers Post No. 5106 v. Donaldson, 267 Ala. 60, 99 So.2d 688; Louisville Fire & Marine Ins. Co. v. St. Paul Fire & Marine Ins. Co., 252 Ala. 532, 41 So.2d 585; Mutual Sav. Life Ins. Co. v. Osborne, 242 Ala. 19, 7 So.2d 319."

In this case, in response to a writ of certiorari which we issued to the register ordering her to correct and complete the record, the register filed a supplement to the record with an amended certificate to the effect that when she received the writ of certiorari the court files and records in the

register's office failed to show that a citation of the appeal from the decree dated April 4, 1969, had been issued and served on the adverse party or her solicitor of record, whereupon she issued a certificate of appeal on May 1, 1970, and served it on the Honorable Bill Fite, solicitor of record for Ethel Reiss, the complainant, on May 16, 1970. This cause was argued and submitted on October 28, 1970. We follow the Blalock v. Johnson case, supra, in appellee's second ground for dismissal of the appeal.

█ Furthermore, we hold that there is no merit in the grounds pertaining to the position taken by appellant in the New York court.

Appellee's motion to dismiss the appeal is denied.

In the Maya Corporation v. Smith case, supra, it was held, not only that the mere act of filing an appeal bond is the event which effects an appeal, but also that the trial court has no power to open or set aside a final decree after the lapse of thirty days from the date of its rendition. Had the appeal bond not been filed on May 1, 1969, the final decree dated April 4, 1969, might have been amended, modified, or set aside by the trial court at any time to and including May 4, 1969, but not thereafter.

█ But the filing of the appeal bond removes the jurisdiction from the trial court to the appropriate appellate court, after which the trial court is without power to pass upon a motion for rehearing or to set aside, amend or modify its final judgment or decree. Sharp v. Edwards, 203 Ala. 205, 82 So. 455; St. Louis & S. F. Ry. Co. v. Dennis, 212 Ala. 590, 103 So. 894.

█ We hold that the decree dated April 4, 1969, was a final decree and that when the register took and approved the appeal bond on May 1, 1969, the trial court was thereafter powerless to amend, modify, amplify or clarify the said final decree, and that the several efforts on his part so to do, as shown by the record, were abortive and of no effect. However, we think man-

damus is the proper remedy, and appellant's application for the writ of mandamus ordering the trial court to vacate the amendments, orders, or decrees dated June 27, 1969, and November 19, 1969, is hereby granted.

Having disposed of the matters hereinabove written to, we now come to grips with the main question; that is, did the trial court err in rendering the decree dated April 4, 1969, annulling the divorce decree that had been rendered by the same trial judge on June 12, 1958?

Mrs. Reiss, the appellee here, was the complainant in the suit in which the divorce was granted. The bill for the divorce was signed by Messrs. James and Rutledge, as solicitors for complainant and filed in the Circuit Court of Winston County on June 11, 1958. It alleged that the husband and wife were bona fide residents of Alabama and charged the husband (appellant here) with statutory cruelty. The husband signed a waiver and answer in Jefferson County, Alabama, before Pearl Patrick, a Notary Public, on the same day that the divorce bill was filed.

On June 12, 1958, Mrs. Reiss testified before Pearl Patrick, a Notary Public for the State at Large, that she and her husband were each over the age of twenty-one years and that each of them was a bona fide resident of the State of Alabama; that two children were born of the marriage, and that the questions of their custody and support had been disposed of by a separation agreement, which she asked the court to incorporate in the decree. The divorce decree was rendered on June 12, 1958, and we note with interest that it recited that the agreement of the parties dated the 14 day of May, 1958, was incorporated in the decree. Before decree the cause was submitted upon the bill and waiver and answer and the deposition of Mrs. Reiss. After having falsely testified and after having had the fruits of the separation agreement, amounting to more than $130,000.00, some ten years later she sought to have set aside the divorce which she

herself had obtained. She did not in her bill or in her testimony offer to return to her husband the money that she had obtained under the separation agreement.

In Levine v. Levine, 262 Ala. 491, 494, 80 So.2d 235, 237, 238, a case very similar in its facts to this case except that in the *Levine* case the wife sought to have set aside a divorce decree obtained by her husband, whereas in this case the wife sought to have set aside a divorce decree obtained by herself, we find these statements taken from Freeman on Judgments, 5th Edition, Volume 3, 1925, Section 1438:

" 'A party cannot invoke the jurisdiction and power of a court for the purpose of securing important rights from his adversary through its judgment and, after having obtained the relief desired, repudiate the action of the court on the ground that it was without jurisdiction. *The question whether the court had jurisdiction either of the subject matter of the action or of the parties, is not important in such cases.* Parties are barred from such conduct not because the judgment is conclusive as an adjudication, but for the reason that such a practice cannot be tolerated.' [Emphasis supplied.]"

The Levine case further says:

"As further grounds for denying relief, we have the equitable maxims that 'those who seek equity must do equity', and 'one that comes into equity must come with clean hands'. * * * The appellant's retention of the total monetary benefits of the divorce decree, while seeking to have the decree nullified, is in conflict with the above stated maxims of equity, and for this additional reason the complainant has closed the doors of the equity court to herself, and chancery must leave her where it found her and refuse to allow her to use the machinery of an equity court to obtain an inequitable end."

Appellee rests her case for relief on the ground that neither party was a resident of Alabama when the divorce was granted and the further allegation that "(c) Complainant participated in said divorce as a result of violence committed on her person by the Respondent or because of the apprehension of such violence, and because of fraudutently [sic] misrepresentations, made to the Complainant by the Respondent."

In Johnson v. Johnson, 182 Ala. 376, 382, 62 So. 706, 708, the court said:

"Where it appears that the plaintiff in whose favor a judgment has been rendered has expressly or impliedly authorized the prosecution of the suit in his name, and it is sought in his behalf to set aside the judgment because of duress in the procurement of such authorization, such duress must be shown by clear, unequivocal averment and supported by clear and convincing proof; and there must be no lack of reasonable diligence to avoid the results complained of  *  *."

■ We are of the opinion that appellee's bill of complaint falls far short of the requirements of the *Johnson* case, and that, had appellant's demurrer been presented to the court for a ruling, it should have been sustained.

Moreover, the proof of the duress alleged in the bill is conspicuous by its absence. We have read and reread Mrs. Reiss' testimony. It contains a number of charges of the commission of violence on her by Mr. Reiss, but nowhere does she testify as to facts that the appellant ever used violence or threats of violence in order to get her to come to Alabama for the purpose of obtaining a divorce. Nor did she testify as to any fraudulent representation on his part to get her to sign the separation agreement or to get the Alabama divorce. On the contrary, she testified "No" in answer to her attorney's question, "Did—prior to June 12, 1958, did your husband make any threat or statement to you about the settlement of ya'll's marital

situation?" Again, we quote from her testimony:

"Q Now, Mrs. Reiss, before you came to Birmingham on June 11th, 1958, did anybody tell you to come down here?

"A You mean force me?

"Q Yes.

"A It was a situation I had no choice. It was either—it was a desperate thing. I didn't have anything—I would go anywhere to get rid of the situation.

* * * * * *

"Q Before you came to Birmingham on June 11, 1958, did you and your husband discuss your obtaining a divorce in Alabama?

"A No. Because I never knew we were going to Alabama. We just had difficulties. They just arranged it all *and I wanted a separation.* [Emphasis supplied.] It was a violent, violent thing and I wanted a separation. We had had it happen 20 times.

* * * * * *

"Q Did you and Mr. Reiss, before ya'll got the money, did you ever discuss obtaining a divorce here in Alabama?

"A No. Never. Never.

"Q Did you ever discuss a separation agreement before May 15, 1958, you and he?

"A. No. No. Something was—no, not with him. There was no discussion.

* * * * * *

"Q. Now, during that period of time did he make any statement to you about the settlement of ya'll's matters, about settling it your way or his way or anything like that?

"A He didn't talk about that. It was through his attorney.

"Q Did he threaten you if you didn't come to Alabama?

"A No. *He didn't threaten.* [Emphasis supplied.] * * *

* * * * * *

"THE COURT: After Mr. Berman gave you the tickets and told you what to do?

"A Not Mr. Reiss, I didn't talk to him. We haven't spoken in all the years."

The foregoing quotes are from her direct examination. We now quote from cross-examination:

"Q Was it not for the same purpose you came to Alabama? You came to Alabama to get a divorce?

"A Yes.

"Q To get a divorce?

"A Right.

"Q You came to the office and you knew it was something about getting a divorce in Alabama?

"A Right.

"Q You wanted to do whatever was necessary to get a divorce in Alabama?

"A Right.

* * * * * *

"Q You wanted to get a divorce in Alabama?

"A Not in Alabama. Anyplace."

Appellee testified that during their marriage appellant gave her $1,000.00 per week to spend on the household and herself and children; that at the time of the separation she had $50,000.00 that she had saved from money given her by him; that she has now spent the $50,000.00 and an additional $35,000.00 that she borrowed from her family.

In the *Levine* case, supra, Justice Mayfield wrote: "Rachel Levine having plucked the goose in 1949, seeks to get her fingers into a new crop of feathers in 1953."

We infer from the testimony that Mrs. Reiss, having spent more than $200,000.00 in the ten years since the granting of the divorce, and now being reduced to the pitiable plight of having to live upon the

$95.00 per week provided for by the separation agreement, also needs to get her fingers into a new crop of feathers.

We are not without sympathy for her plight, but we must perforce follow the law laid down in the *Levine* case, supra, and other cases therein cited, and leave appellee entangled in the web which she wove in 1958.

In Multer v. Multer, 280 Ala. 458, 195 So.2d 105, a case much like the case at bar in its facts, except that the husband had obtained the divorce and the wife sought to have it set aside two years later, during which time the husband had remarried and had one or more children by the subsequent marriage, the court held that the wife's right was barred by laches. In the case at bar, the appellant remarried some eight years after the divorce was granted and two years before the bill in this case was filed. We hold that the trial court should have denied relief under the doctrine of laches as enunciated in the *Multer* case, supra, as well as under the doctrine of estoppel as enunciated in the *Levine* case, supra.

To summarize, we hold that Mrs. Reiss, having acquiesced in the divorce decree and the separation agreement and having accepted the fruits thereof for some ten years, is estopped to have the same annulled and is bound by the terms thereof.

Unless the trial court within fifteen days of being advised of our holding renders a decree annulling and declaring for naught the decrees or amendments rendered in this cause on June 27, 1969, and November 19, 1969, the writ of mandamus will issue.

The decree dated April 4, 1969, declaring the divorce decree rendered on June 12, 1958, null and void is reversed and rendered and appellee's bill of complaint as amended is dismissed.

Reversed and rendered.