260 So.2d 396

Sarah B. WEEKS

v.

Charles S. WEEKS.

4 Div. 36.

Court of Civil Appeals of Alabama.

March 22, 1972.

Alto V. Lee, III, and Huey D. McInish, Dothan, for appellee.

Robert B. Albritton, Andalusia, J. Robert Ramsey, Dothan, for appellant.

**BRADLEY, Judge.**

A bill of complaint was filed in the Circuit Court of Houston County by the appellee seeking a divorce from the appellant.

In the bill it was alleged that a decree had been rendered on February 4, 1966 for appellant's separate support and maintenance, and since more than two years had elapsed since the decree of February 4, 1966, appellee was, pursuant to the provisions of Title 34, Section 22(1), Code of Alabama 1940, as Recompiled 1958, seeking a divorce a vinculo matrimonii.

After the pleadings were settled and a hearing on the merits was had, the court rendered a decree awarding appellee a divorce as prayed in his complaint.

This decree also directed the register to hold a reference for the purpose of ascertaining the real and personal property owned by appellee plus his income and what would be a reasonable sum for the support of appellee's two daughters.

A reference was held and report made to the court by the register; the court rendered a decree on January 11, 1971 based on the report, in which it gave custody of the two daughters to appellant and ordered appellee to pay to appellant as alimony $20,000 plus giving her a deed to his one-half interest in their house. He was also ordered to pay to appellant's attorneys $1,500 as attorneys' fees. He was further ordered to pay to appellant as child support $250 per month per child until such time as each girl entered college, at which time the allowance would be reduced to $125 per month per child, or until the child reached 21 years, whichever should occur first. Appellee was also ordered to pay all college expenses, and medical and dental expenses for the children.

The application for rehearing was denied on March 8, 1971.

Subsequently, appellee filed an ex parte petition asking the court to permit him to pay the $20,000 alimony in gross to the register rather than to appellant, and to order the register to invest this sum and pay the proceeds of the investment to him until the appeal was decided. Permission was also requested in this same petition to deposit the deed with the register to await the outcome of the appeal rather than giving it to the appellant.

The relief requested by the petition was granted by the trial court on April 12, 1971.

On April 29, 1971 appellant appealed to this court from the decree of January 11, 1971.

Then on May 21, 1971 appellee filed a second ex parte petition asking permission to pay to the register the $1,500 that had been awarded to appellant's attorneys as their fees. The relief sought by this petition was granted on the same day that it was filed.

On October 11, 1971 appellant, by way of a petition for the writ of mandamus, asked this court to direct the trial court to vacate and hold for naught its orders entered in response to the two petitions mentioned above.

By assignments of error, appellant has questioned the decree of the court as regards the amount of the alimony in gross, the amount of the award for attorneys' fees, and the amount awarded for the children's support. Appellant has also questioned the two orders of the court on the ex parte petitions by appeal and in the alternative by way of a petition for the writ of mandamus. She says that appellee's net worth is between $200,000 and $300,000 at the present time, and she further says that she worked alongside of appellee and helped him accumulate this estate.

Appellant stated that when she and appellee were married in 1949, he was making

$25 per week working in his father's gin, and she was earning $125 to $150 per month teaching school. Neither of them had any separate property.

She continued teaching school for two years, but during the summers she worked at her father-in-law's gin, earning between $25 to $30 per week.

After about two years of married life the Weeks moved to Ashford where they both worked in the gin or in other jobs that the appellee was handling. It was about this time that appellee started operating trucks for hire.

Appellant stated that the money they earned went into a common fund.

She said they bought their first house when they moved to Ashford and then built another one in 1959.

Along in 1955 or 1956 appellant testified that she and a Mrs. Douglas opened a flower shop in Ashford on borrowed money. After about a year appellant bought out Mrs. Douglas with earnings from the business. She did state that the appellee helped her with the management of the shop.

In 1960 the flower shop was sold for $6,000. The sale price was paid monthly by check made out to both appellant and appellee, the check was endorsed and used for their common needs.

The house that was built in 1959 was constructed on a lot in Ashford, the title to which was in appellant and appellee jointly.

The appellant and appellee also acquired several farms with title being taken jointly. The total acreage of these farms is 212. Appellee took title in himself in one farm consisting of 120 acres, and two rental properties.

Total value of these properties according to appellee was about $88,000.

They then purchased a cottage and two vacant lots in Panama City, Florida, for a purchase price of about $26,200, with title being taken jointly.

Appellant said that during this period of time appellee's business continued to grow and prosper.

In the early 1960's an estate plan was made on appellee's holdings and the result was to incorporate the truck line, with appellee receiving 98% of the stock, appellant 1% and appellee's mother 1%. Appellant also stated that the title to the cottage and two vacant lots in Panama City was later transferred to the corporation.

Pursuant to the estate plan, title to all of the real estate except the homeplace was placed in the appellee rather than jointly as most of it had been before the estate plan.

In 1964 when the parties separated they were filing joint income tax returns and appellee was reporting a net annual income of about $25,000.

The evidence also reflected that there had been savings accounts at Dothan Federal Savings and Loan Association in the amount of $20,500 for the children; and another in the amount of $2,544.38 in a joint savings account. Appellant said she does not know the status of these accounts.

Appellant stated that since the separation, appellee has acquired more land at Panama City, more trucks, and a trailer park in Panama City.

It was also the testimony of the appellant that the gin had been sold since the separation and appellee's interest had brought about $44,000.

Appellant testified that she was receiving $600 per month as alimony and child support as a result of the 1966 decree awarding her separate maintenance. She was also operating a flower shop on money which she had borrowed.

Out of the $600 she pays all of the living expenses for the two children and herself.

Appellee does pay the children's medical expenses.

She stated that her profit from the flower shop business was about $3,000 for the year 1970.

Appellee testified that appellant was paid for the time she worked in his business and none of the money earned in this fashion was used to help him acquire any property.

He stated the money from the sale of the flower shop was distributed as follows: $2,500 to a savings account and the balance to purchase furniture for the house that was built in 1959 and occupied in 1960, and where appellant and the children are now residing.

Appellee testified that in 1951 his father owned 29 shares in the Farmer's Gin Company at Ashford, Alabama and upon his death that year he got two shares, his brother received two shares, and his mother was given 25 shares. In 1961 he received the 25 shares from his mother by paying off two notes of $4,000 and $3,000 she owed. Afterwards the gin was sold and appellee received as his share of the proceeds from the liquidation of this property about $62,000.

Appellee also stated that a portion of the money received from the sale of the gin was used to buy the farms previously mentioned.

There is testimony that $9,526.52 which was in the First National Bank of Dothan came from an inheritance, and the money that was in savings accounts for the children was put in municipal bonds.

The lot upon which the family house was built in 1959 was purchased from Farmer's Gin Company for $3,000, $900 of which was paid to other shareholders in Farmer's Gin besides himself, his brother and his mother.

Appellee stated the house cost $21,000 to build, plus the $3,000 for the lot, a total of $24,000.

He also has $12,000–$15,000 in the Headland National Bank in savings.

According to appellee, his net worth as of September 30, 1970 was $165,539.37.

The reference report of November 24, 1970 showed that appellee owned four farms totaling 332 acres which were valued at $48,200; two rental properties of nominal value from which he receives no rent; and a one-half interest in the house and lot now occupied by appellant and children. The report showed no outstanding mortgages on any of the above properties. Appellee's ownership of stocks and bonds is as follows:

1. Gulf Oil Corp.—400 shares, value $10,800

2. Municipal Bonds—$22,000

3. Harper and Weeks, Inc.—no value. Company incorporated in 1970 for $5,000

4. Holiday Inn stock—500 shares (In 1965 100 shares had been valued at 16⅝, or $1,662.50)

5. Headland National Bank—savings account $15,000

6. Sale of Farmer Gin Co.—notes receivable, $17,836

7. Charles S. Weeks, Co.—98% of shares account receivable, $81,999.91

8. First National Bank of Ashford—5 shares valued at $1,375

The reference report showed appellee's income to be as follows:

1. Dividend income in 1969, $317.78

2. Savings account interest, $3,238

3. Allotment checks from Govt., $1,575

Title 34, Section 31, Code of Alabama 1940, as Recompiled 1958, provides as follows:

"§ 31. If the wife has no separate estate, or if it be insufficient for her

maintenance, the judge, upon granting a divorce at his discretion may decree to the wife an allowance out of the estate of the husband, taking into consideration the value thereof and the condition of his family."

The Supreme Court said in Gibson v. Gibson, 203 Ala. 466, 83 So. 478, that:

"It also seems that under section 3804 the wife is entitled to permanent alimony upon the granting of a divorce, whether in her favor or in favor of the husband, as matter of right, unless she has a separate estate sufficient for her support and maintenance."

The evidence shows appellant had no separate estate except the one-half interest in the house where she and the children were living.

We held in Watson v. Watson, 45 Ala. App. 306, 229 So.2d 807, that:

"When permanent alimony is awarded in gross, the amount thereof usually varies from one-half of the husband's estate to one-third or less. In determining the amount of permanent alimony there is no fixed rule, since each case must be decided upon its own relevant facts in the light of what is fair and reasonable. Phillips v. Phillips, 221 Ala. 455, 129 So. 3; Steiner v. Steiner, 254 Ala. 260, 48 So.2d 184."

The Supreme Court also added in Steiner v. Steiner, supra, that:

" . . . it is proper to consider the earning ability of the parties, their probable future prospects, their age, health and station in life, duration of the marriage and the conduct of the parties with reference to the cause of divorce. Garlington v. Garlington, 246 Ala. 665, 666, 22 So.2d 89; Ortman v. Ortman, 203 Ala. 167, 82 So. 417."

In the instant case permanent alimony in gross was awarded to appellant in the amount of $20,000 to be paid to appellant within 90 days of the rendition of the decree.

■ Appellant was awarded the appellee's one-half interest in the family home. Such an award has been considered as part of the alimony in gross. Smith. v. Rogers, 215 Ala. 581, 112 So. 190. The valuation of the house and lot at the time the house was built in 1959 was approximately $24,000.

Appellant contends that the award is grossly insufficient in view of the estate of the husband, his age, health and earning capacity.

■ The testimony as to appellee's net worth ranged up to $300,000. The register's report after the reference showed his net estate to be in the neighborhood of $165,000.

The evidence also shows that appellee is around 40 years of age, in good health, and has an innate capacity for business and earning money. It reflected that he was a hard worker and an excellent business man.

According to the evidence, appellant was a woman 40 years old, in average health, and possessed of an estate consisting of a one-half interest in the family home, and a flower shop. The flower shop, which is located in the homeplace, commenced operation on borrowed funds, and in the year 1970 earned about $3,000.

In Smith v. Rogers, supra, and as reiterated in Thompson v. Thompson, 282 Ala. 248, 210 So.2d 808, the Supreme Court said:

" . . . alimony in gross, . . . is intended to effect a final termination of the property rights and relations of the parties, and is an approximate appraisal of the present value of the wife's *future support*, and, in a measure, a compensation for her loss of inchoate property rights in her husband's home-

stead and other estate, given to her by statute in case of her survival."

Also, in Le Maistre v. Baker, 268 Ala. 295, 105 So.2d 867, which case also was relied on in Thompson v. Thompson, supra, the Supreme Court said:

" . . . Alimony has as its sole object the support of the wife, and is not to be considered a property settlement upon a dissolution of the marriage."

The cash amount of $20,000 awarded to appellant, if invested so as to return 6% interest, would result in an annual income of only $1,200.

This amount would not support appellant in future years.

Nor does this amount compensate appellant for her loss of future support from appellee had they lived together as man and wife, nor does this amount compensate her for her loss of the inchoate property rights in her husband's estate had they remained together as man and wife and she had survived him.

It is quite apparent that the trial court considered appellant entitled to alimony, for it awarded a sum for such even though the divorce was granted to appellee pursuant to the authority of Title 34, Section 22(1), Code of Alabama 1940, as Recompiled 1958, as amended by Act No. 300, General Acts of Alabama 1967, p. 839.

There is no contention by appellee that appellant was not entitled to alimony, and appellant's only objection is the inadequacy of the award.

Applying the above principles to the facts previously set out, we are in agreement with appellant that the award of alimony is inadequate.

Keeping in mind the guidelines set out in the cited cases, we are of the opinion that the award of $20,000 as alimony is inade-

quate, and an amount of $40,000 would be more in keeping with appellant's support requirements and also her loss of the inchoate rights to appellee's estate. And the decree of January 11, 1971 specifically stated that such award was in lieu of any "future support, dower, homestead or any other property rights."

Paragraph 13 of the decree of January 11, 1971 will, on remandment, be revised so as to reflect that the appellant is to receive $40,000 in cash rather than $20,000. No other change will be made in Paragraph 13 of said decree.

■ Appellant's argument that the award for child support is insufficient, is without merit.

The decree provided that each child was to receive as support $250 per month until such time as said child entered college or reached the age of 21 years.

Should the children go to college, all expenses necessary for their maintenance will be paid by appellee, including medical and dental expenses, and while the children are in college, appellant is awarded $125 per month for the child in college to meet the expenses incurred while said child is at home.

It was also provided in the decree that appellee would pay all medical, dental and hospital expenses incurred by the children over and above the $250 per month paid to appellant for their support.

There is no error in this aspect of the trial court's decree.

Appellant contends in brief that the amount awarded to her for her attorneys' fees is also insufficient.

■ For the representation received in case #7560, which was the matter resulting in the decree of separate support and maintenance, appellant was given $2,500 as attorneys' fees for her counsel.

The present controversy is an extension and enlargement on the previous matter as represented by case #7560. The ground covered in the instant case is merely a review and updating of the prior matter. For this work appellant's lawyers were awarded $1,500, which sum was well within the evidence presented on what would be a reasonable amount for attorneys' fees.

We find no fault with this aspect of the trial court's decree.

By way of assignments of error in the appeal record and in the alternative by a petition for the writ of mandamus, the appellant has questioned two ex parte orders issued by the trial court after the decree of January 11, 1971 had been rendered and after the application for rehearing had been overruled.

The first ex parte order issued by the trial court resulted from a petition filed by the appellee asking the trial court to permit him to deposit the deed transferring his one-half interest in the homeplace to appellant with the register and also to permit him to pay the $20,000 to the register rather than to appellant, pending the outcome of the appeal. The register was further requested to invest the $20,000 and pay the proceeds of such investment to appellee.

We deem a recitation of events leading up to the orders in question to be helpful in understanding the issue before the court. The final decree awarding alimony in gross, child support and other relief was filed on January 11, 1971; the application for rehearing was overruled on March 8, 1971, and on April 12, 1971 the court entered an order in conformity with the prayers of the petition heretofore mentioned.

At this point in time, appellant had not appealed from the final decree of January 11, 1971. The final decree specifically provided that the $20,000 was to be paid to appellant within 90 days of said decree; likewise, the deed to appellee's one-half interest in the homeplace was to be given to appellant within 90 days of said decree. Yet, three months after the final decree and over a month from the denial of the application for rehearing, the trial court altered, modified and changed its final decree of January 11, 1971 by providing that appellee, instead of giving appellant the money and deed, was to deliver both to the register for retention and investment to await an appeal or the expiration of the time in which an appeal could be taken.

◼ Equity Rule 65, Title 7, Code of Alabama 1940, as Recompiled 1958, Appendix, provides as follows:

"Unless the jurisdiction of the court is invoked by a bill of review or by a bill in the nature of a bill of review, the court cannot alter a final decree other than by correcting clerical errors therein, after the lapse of thirty days from the date of its rendition, except where an application for rehearing has been duly filed and has not been ruled upon."

The ex parte order was issued more than thirty days after the application for rehearing had been overruled.

Consequently, the trial court had lost jurisdiction over the final decree of January 11, 1971, so as to alter or modify it by ordering that the deed and money be delivered to the register rather than the appellant. The order of April 12, 1971 was therefore void and of no effect.

On April 22, 1971 appellant appealed to this court the final decree of January 11, 1971. The appeal bond was filed on April 29, 1971.

On May 21, 1971 the appellee again petitioned the trial court to permit him to pay the $1,500 attorneys' fee to the register rather than to appellant's attorneys, as provided in the decree of January 11, 1971.

An ex parte order was issued on May 21, 1971, authorizing appellee to deposit the $1,500 attorneys' fee with the register and to be held until the disposition of the appeal previously taken by appellant.

Appellant says, and we think rightly so, that the trial court had lost jurisdiction over the January 11, 1971 decree and could not alter, amend or modify it by directing that the attorneys' fee be paid to the register rather than to appellant's attorneys, for more than thirty days had elapsed from the overruling of the application for rehearing. Equity Rule 65, supra.

We also said in Reiss v. Reiss, 46 Ala. App. 422, 243 So.2d 507:

" . . . that the decree dated April 4, 1969, was a final decree and that when the register took and approved the appeal bond on May 1, 1969, the trial court was thereafter powerless to amend, modify, amplify or clarify the said final decree, and that the several efforts on his part so to do, as shown by the record, were abortive and of no effect. However, we think mandamus is the proper remedy, and appellant's application for the writ of mandamus ordering the trial court to vacate the amendments, orders, or decrees dated June 27, 1969, and November 19, 1969, is hereby granted."

The ex parte order of May 21, 1971 coming after the appeal was taken was "abortive and of no effect."

Appellant not only questioned the rulings on the two ex parte orders by assigning errors on the appeal, but also filed a petition for mandamus to have the trial court vacate the two ex parte orders.

We think mandamus is the proper remedy here, and the writ is hereby granted.

The decree appealed from is affirmed in part and in part reversed and remanded with directions.

Affirmed in part; in part reversed and remanded with directions.