# Murray v. Murray.

### Bill in Equity for Alimony without Divorce.

1. *Alimony without divorce.*—Under the doctrine declared by this court many years ago (*Glover v. Glover*, 16 Ala. 440), the wife may maintain a bill against her husband for alimony, without also asking a divorce.

2. *Same; how decreed and enforced.*—Where the bill seeks alimony only, and the evidence establishes a case for relief, the court will deal only with the income of the husband's property, and will not attempt to divest the title of any part of it, nor permanently deprive him of its use; but the payment of the allowance as decreed, may be enforced by attachment of his person, and, if that remedy prove ineffectual, his property may be placed in the hands of a receiver or trustee, the cause being kept open for modification as circumstances may require.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS W. COLEMAN.

The bill in this cause was filed by Mrs. Murray against her husband seeking *alimony* without a divorce. The chancellor on hearing decreed a certain sum to be paid monthly to Mrs. Murray, and to be a lien on defendant's property; and afterwards on petition the chancellor decreed a certain sum in gross as alimony, declared such sum a lien on defendant's property, and directed that the property of defendant be sold for the payment of such sum, the real estate first, and the personal property if necessary. From the decree of the chancellor defendant appealed.

PILLANS, TORRY & HANAW, for appellant. The principle announced in *Glover v, Glover*, 16 Ala. 440, and 33 Ala. 98, in *Mims v. Mims*, that independent of statute the chancery court may decree alimony on bill filed for that purpose alone, is opposed to the general doctrine in the United States and England.—*Methvin v. Methvin*, 60 Amer. Dec. 666; *Adams v. Adams*, 100 Mass. 365; 2 Bishop, Mar. and Div. 4th Ed., §§ 374, 352. The chancellor erred in the decree

rendered, 45 Ala. 264; 60 Am. Dec. 668; 2 Bish. on M. and D., 4th Ed., § 427; 15 Am. Dec. 781; 71 Ala. 83–87; *King v. King*, 28 Ala. 315; *Lovett v. Lovett*, 11 Ala. 763.

GREGORY L. & H. T. SMITH, *contra*.—A bill may be maintained for alimony on account of cruelty without a divorce. *Glover v. Glover*, 16 Ala. 442; *Miller v. Miller*, 1 N. J. Ch. 386; Bishop on Mar. and Div., § 549, *et seq.* Permanent alimony may be given *in solido*, *Jetter v. Jetter*, 36 Ala. 397; Code 1886, § 2333. There was no error in declaring a lien on the property, 25 Ala. 136; 26 Iowa, 503; 40 N. H. 516; 2 Black (Ind.), 295; 6 Duer. (N. Y.), 102; 2 Abb. Pr. 144; 1 Chand. (Wis.), 280. Exemptions can not be claimed against alimony, 68 Ala. 320; 97 Mass. 529; 2 B. Monroe, 142; 21 Conn. 142; 45 Ill. 167; 1st E. D. Smith, 190; 2 Bish. on Mar. and Div. § 488.

STONE, C. J.—The present bill is by the wife against the husband, and prays for alimony, but does not seek a divorce. Many, probably a majority of the adjudged cases and elementary books hold that the relief here prayed can not be granted, except as an incident to divorce proceedings instituted. This court, obeying an instinct of humanity, and following the lead of several adjudged cases, declared a different doctrine near forty years ago, and has steadfastly maintained it.—*Glover v. Glover*, 16 Ala. 440; *Hinds v. Hinds*, 80 Ala. 225. The case last cited refers to most of the authorities supporting the doctrine. We need not repeat them here.

The case made by the bill before us presents a case of harshness, cruelty, and almost unparalleled brutality on the part of the husband, alike to his wife and to his children. And this most unnatural conduct is alleged to have been kept up, almost without intermission, for a series of years. Not in paroxysms, but a frequent, if not an every day occurrence. And yet, unnatural and inhuman as his conduct is alleged to have been, he not only did not deny the charges, though personally served with summons, but entirely failed to answer the bill. And he neither introduced testimony, nor cross-examined complainant's witnesses, in reference to these charges, so damaging to his reputation. The proof fully sustains the charges made, and presents in strong light the claims of the suffering wife to all the protection and relief the chancery court can give her.

[Murray v. Murray.]

But, we must not lose sight of the nature and object of the proceedings before us. It is not application for a severance of the nuptial bonds. That can not be granted under the present bill. They are still to remain husband and wife, with the rights and disabilities attaching to, and consequent on that relation. And, improbable as it may appear, time may bring calmer and better counsels, and reunite the family. At all events, we must deal with the case on the postulate that such consummation is possible.

We have statutes which provide for alimony, temporary and permanent, but they make no provision for cases in which no divorce is sought.—Code of 1886, § 2331, *et seq.* They do not provide for such a case as this, except possibly in the analogies they furnish.

Treating these parties, then, as husband and wife, and having no ground for anticipating a dissolution of that relation so long as they both shall live, we feel that we have no power to take the title of property of one and vest it in the other. Nor should we make or sanction any order, which may result in a transfer of title from one to the other.—*Bacon v. Bacon*, 43 Wis. 197; *Quisenberry v. Quisenberry*, 1 Duval 197; *Wallingsford v. Wallingsford*, 6 Har. & J. 485; *Adams v. Adams*, 100 Mass. 365; *Barber v. Barber*, 1 Chand. (Wis.) 280; *Almond v. Almond*, 4 Rand. 662; s. c. 15 Amer. Dec. 781; *Methvin v. Methvin*, 60 Amer. Dec. note, pp. 668; 669.

The only duty owed from the husband to the wife, in the case before us, which we have power to enforce, or aid in enforcing, is that of maintenance. And, in accomplishing this, we feel authorized to deal only with his income. We hold we can not compel him to labor and earn an income, although some authorities assert that doctrine.—60 Am. Dec. 680, in note to *Methvin v. Methvin.* Nor should we permanently divest him of the use of any property. We should, if possible, so deal with him, as to cause his interest and duty to point to the same end—the maintenance, protection, comfort and happiness of his family.

The duty of the husband to provide maintenance for his wife is much more binding than mere contractual obligation. And it is not only a duty to her, but he owes it to the public, lest she become a charge upon it. And the measure of this duty is graded by his means and position in society; but the extent of its obligation—the style of living—is not a matter of judicial cognizance. Maintenance, not beyond the husband's means, is all the law can enforce.

[Murray v. Murray.]

We have said this duty and obligation are not merely contractual. Their disregard and breach partake largely of the nature of a tort. The Chancery Court may and does enforce their observance by attachment of the person of the husband, and this is not imprisonment for debt, within the prohibition of our constitution.—*Lyon v. Lyon,* 21 Conn. 185; *Ex parte Hardy,* 68 Ala. 320; *Chase v. Ingalls,* 97 Mass. 524; *Logan v. Logan,* 2 B. Mon. 142; *Wightman v. Wightman,* 45 Ill. 167; *Grimm v. Grimm,* 1 E. D. Smith, 190.

The remedial instrumentalities pointed out above, it is believed, will generally be found sufficient to secure to the wife such rights as the law can enforce. Should they fail, can the court take any further step?

We hold it can. If the husband disobey the order of the court, and refuse to provide maintenance for his wife driven from his home, and if attachment of his person fails to obtain compliance with the court's order, there is no other remedial agency, save through the husband's property. If necessary, it may be placed in the hands of a receiver or trustee, in order that the maintenance decreed to the wife, or some ascertained portion of it, may be raised from the income of the property.—*Lovett v. Lovett,* 11 Ala. 763; *Quisenberry v. Quisenberry,* 1 Duval 197.

The foregoing measures may seem harsh, but it is believed that nothing less than we have declared can be made effective. It is believed further that by forcing the interest and duty of the offending husband to run in the same channel, the chances of reformation and reconciliation will be promoted.

Maintenance in a case like the present should not be fixed or permanent. It should be so far left open, as that changes or modifications may be made, as circumstances may render proper. Of course the maintenance as such, ceases when the marriage is dissolved by death or otherwise. Nor should the property be so tied up, as that no change in the investment can be allowed. The property should not be suffered to remain out of repair. All these questions should be kept within the control of the chancellor, so that a change of investment, or repairs may be ordered, when deemed necessary or beneficial, if desired by the parties interested.

We confine the rules declared above, to cases of separation caused by the fault of the husband.

The decree of the chancellor of June 18th, 1887, is reversed so far as it orders the sale of real estate, and of the

[Allen v. Allen.]

schooner. And the decrees of December 2nd and 9th, 1887 are reversed.

Reversed and remanded.

