210 So.2d 808

Ex parte Jack THOMPSON.

In re Madge THOMPSON

v.

Jack THOMPSON.

3 Div. 194.

Supreme Court of Alabama.

May 23, 1968.

Hill, Robison & Belser, Montgomery, for appellee.

Alvin T. Prestwood, Volz, Capouana, Wampold & Prestwood, Montgomery, for petitioner-respondent.

LAWSON, Justice.

This is an original proceeding for certiorari in this court to review the action of the Judge of the Domestic Relations Division of the Circuit Court of Montgomery County, in Equity, holding Jack Thompson, the petitioner, to be in contempt of court.

Madge Thompson filed suit for divorce against Jack Thompson on April 2, 1964, in the Bessemer Division of the Circuit Court of Jefferson County, in Equity. The ground for divorce was cruelty.

On June 3, 1964, the said divorce suit was ordered to be transferred to the Circuit Court of Montgomery County, in Equity, under the provisions of Act 76, approved September 15, 1961, Acts of Alabama 1961, Vol. II, p. 1953. See 1965 Cumulative

Pocket Part to Vol. 3 of the 1958 Recompiled Code of Alabama, where the provisions of Act 76, supra, are designated as §§ 64(1) and 64(2) of Title 7. The transfer was completed on or about June 5, 1964.

The bill filed by Madge Thompson contained the following averments:

"6. That Respondent and Complainant during their married life formed a Corporation known as Aero Charter, Inc., which participated in the airplane charter business and to finance the purchase of airplanes for said Corporation and to operate the business Respondent induced Complainant to invest monies which belonged to her before their marriage, and Respondent further induced Complainant to make personal loans for said business, and said Corporation loss (sic) considerable money and incurred extensive debts all due to Respondent's negligence (sic) manner in operating said business. The debts now owed include Ed S. Moore, $1,100.00; Steiner Bank of Birmingham, $1,600.00; Public Finance Corporation, $1,000.00; M. M. Flyers, $500.00; Standard Oil Company, $300.00."

Aside from the prayer for general relief, the bill prayed for an absolute divorce, temporary and permanent alimony to be paid monthly, and solicitor's fees. The bill also contained the following special prayer:

"Complainant further prays that this Honorable Court order and decree that Respondent refund to Complainant her monies invested in aforementioned Corporation *and further order and decree that Respondent assume and pay her personal obligations incurred for said Corporation.*" (Emphasis supplied) .

On July 30, 1964, there was filed in the Domestic Relations Division of the Circuit Court of Montgomery County, in Equity, to which we will sometimes hereinafter refer as the trial court, an undated separation agreement apparently signed by Madge and Jack Thompson, wherein the former is referred to as the party of the first part and the latter as party of the second part. The separation agreement contained the following provisions:

"2. The Party of the Second Part agrees to pay and expressly assumes as his obligation and responsibility to pay, all amounts owing to the following creditors: M. & M. Flyers; Ed S. Moore, Inc.; note to the Exchange Security Bank of Birmingham, Alabama; Standard Oil Company; and Public Finance Company. The Party of the Second Part agrees to promptly pay these obligations and agrees to pay an amount of not less than $100.00 per month, to be distributed pro rata between the first three as listed above, specifically, M. & M. Flyers, Ed S. Moore, Inc., and the Exchange Security Bank of Birmingham, Alabama.

\* \* \* \* \* \*

"In the event the Party of the First Part insists on her express determination to obtain a divorce from the Party of the Second Part, it shall be thoroughly understood that the Party of the Second Part denies and expects to continue to deny that she is in any way entitled to a divorce and in the event the Court, upon hearing, should decide that the Party of the First Part is entitled to a divorce, then it is agreed and understood that this Agreement and all of its terms shall be submitted to the Court for its approval and shall not be executed until and unless the Court does approve the same."

On the day that the separation agreement was filed, July 30, 1964, Jack Thompson, the respondent in the divorce action, filed in the trial court an answer and a waiver of notice to him of the taking of testimony or other proceedings, consenting that the suit for divorce proceed to a final decree without further notice to him.

On August 6, 1964, the trial court rendered a final decree which, in pertinent part, reads as follows:

"1. That the bonds of matrimony heretofore existing between the Complainant and Respondent be, and the same are hereby dissolved, and the said Madge Thompson is forever divorced from the said Jack Thompson.

\* \* \* \* \* \*

"4. That the agreement between the parties heretofore filed in this cause be incorporated in this Decree and made a part hereof the same as if fully set forth herein."

On December 3, 1964, Madge Thompson filed a petition in the trial court asking that Jack Thompson be required to show cause why he should not be held in contempt of court in that "he has failed and refused to pay any amounts whatsoever to the Exchange Security Bank of Birmingham, Alabama; Standard Oil Company; Public Finance Company; M. & M. Flyers, and Ed S. Moore," although he had sufficient means to make payments. In essence, the petition sought to have Jack Thompson adjudged to be in contempt of court for failure to comply with the provisions of Paragraph 2 of the separation agreement.

On January 7, 1965, the trial court rendered a decree wherein Jack Thompson was adjudged to be in contempt of court and as punishment for such contempt it was decreed that he be confined "in the jail of Montgomery County until further Order of this Court."

Jack Thompson was not arrested and confined as ordered in the decree of January 7, 1965, apparently because he made payments to one or more of the "creditors" named in Paragraph 2 of the separation agreement.

On April 1, 1965, Madge Thompson filed her second petition wherein she prayed in effect, that Jack Thompson be required to show cause why he should not be adjudged to be in contempt of court in that " \* \* \* on, to-wit the 6th day of August, 1964, this Honorable Court entered a decree confirming the agreement of the Respondent and the Complainant and ordering the Respondent, Jack Thompson, to pay certain obligations and Respondent is now in arrears again on his payments under the decree heretofore rendered, and has willfully refused to make proper and sufficient payments as set out in said decree of this Honorable Court."

Following a hearing on April 16, 1965, at which Madge and Jack Thompson were the only witnesses, the trial court on May 4, 1965, rendered the following decree:

"This cause coming on to be heard on the verified petition of Complainant's attorneys, in which Complainant avers that Respondent has failed to make payments as previously ordered by this Court, and praying that said Respondent be held in contempt of this Court and also praying for general relief.

"The premises considered, and the Court hearing the testimony of the parties, the Court finds that the allegations of the petition are true. It is therefore,

"ORDERED, ADJUDGED AND DECREED BY THE COURT that the said Jack Thompson pay either to Complainant or to the named parties as set out in Paragraph No. 2 of the Separation Agreement as signed and agreed to by the Respondent which said agreement was filed in this cause and made a part of this decree or said payments are to be paid into the Domestic Relations Division of the Circuit Court of Montgomery County, Alabama, an amount equal to the amounts owing to the creditors as set out in Paragraph No. 2 of the Separation Agreement filed in this said cause and made a part of this Court's decree, payable within ten (10) days from date of this decree.

"That if said payment is not made within ten (10) days from the date of this decree, any Sheriff of the State of Alabama is hereby ordered and directed to arrest said Jack Thompson and

place him in the Montgomery County jail where he shall remain until further order of this Court.

"That the said Jack Thompson, if said payments are not made, can purge himself of said contempt by posting a good and sufficient bond in the amount of SIX THOUSAND and NO/100 ($6,000.00) DOLLARS payable to complainant Madge Thompson, said bond is subject to the approval of the Deputy Register.

"Costs for these proceedings are hereby taxed against Respondent for which let execution issue."

█ Upon request of Jack Thompson, the trial court ordered that he not be arrested prior to May 25, 1965, and before that date Jack Thompson filed in this court his petition for writ of certiorari to review the trial court's decree or order of May 4, 1965, adjudging him to be in contempt of court. The writ was issued. Under the circumstances just related, certiorari is the proper method of review. See Worley v. Worley, 267 Ala. 71, 100 So.2d 18.

The threshold question presented for our consideration is whether petitioner's failure to comply with the provisions of Paragraph 2 of the separation agreement is punishable by imprisonment for contempt of court.

█ Petitioner, Jack Thompson, concedes that it is the law of this state that a decree ordering a husband to pay alimony can be enforced by contempt proceedings and imprisonment of the husband unless he purges himself of the contempt by paying the alimony or by showing that he has neither estate nor ability to pay. —Ryan v. Ryan, 267 Ala. 677, 104 So.2d 700; Ex parte Stephenson, 252 Ala. 316, 40 So.2d 716, and cases cited. This, for the reason that we have held that alimony is not a debt within the meaning of § 20 of the Alabama Constitution of 1901, which provides: "That no person shall be imprisoned

for debt." —Murray v. Murray, 84 Ala. 363, 4 So. 239; Ex parte Stephenson, supra.

But petitioner contends that the decree of August 6, 1964, did not require him to pay alimony to his wife; that the payments which he agreed to make in Paragraph 2 of the separation agreement, which was incorporated into the decree of August 6, 1964, were not for alimony but for debts, some of which "are debts of the corporation, some of the petitioner, and some of Madge Thompson;" hence, the decree or order of May 4, 1965, in so far as it orders petitioner to be imprisoned because he has not made payments as provided in Paragraph 2 of the separation agreement is erroneous in that it is violative of § 20 of the 1901 Constitution of Alabama, supra. See Ex parte Dickens, 162 Ala. 272, 50 So. 218.

On the other hand, in the brief filed here on behalf of Madge Thompson in support of the decree of the trial court presently under review, it is contended that the incorporation into the divorce decree under date of August 6, 1964, of the provisions of Paragraph 2 of the separation agreement is tantamount to or constitutes an award of alimony in gross to Madge Thompson.

The statutory authority for the awarding of alimony to the wife in a divorce decree is found in §§ 31, 32 and 33 of Title 34, Code 1940. We are not here concerned with § 33, supra, because it deals with the awarding of alimony to the wife where the decree is in favor of the husband for the misconduct of the wife. The divorce in this case was awarded to the wife because of the misconduct of the husband.

Sections 31 and 32, Title 34, supra, read:

"§ 31. If the wife has no separate estate, or if it be insufficient for her maintenance, the judge, upon granting a divorce at his discretion may decree to the wife an allowance out of the estate of the husband, taking into consideration the value thereof and the condition of his family.

"§ 32. If the divorce is in favor of the wife for the misconduct of the husband, the judge trying the case, shall have the right to make an allowance to the wife out of the husband's estate, or not make her an allowance as the circumstances of the case may justify, and if an allowance is made it must be as liberal as the estate of the husband will permit, regard being had to the condition of his family and to all the circumstances of the case."

■■ The provisions just quoted have been construed by this court as authorizing the allowance to the wife as alimony to be made in gross out of the husband's estate, payable presently or as directed; or it may be made as for continuous maintenance, payable in monthly or other periodical installments; or by a combination of both of these methods. Specific property of the husband may also be awarded as permanent alimony. —Smith v. Rogers, 215 Ala. 581, 112 So. 190; Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244; Wood v. Wood, 263 Ala. 384, 82 So.2d 556; Frazier v. Frazier, 273 Ala. 53, 134 So.2d 205.

In Smith v. Rogers, supra, we said:

"But, on principle, there is no escape from the conclusion that a decree for alimony in gross, if without reservation, becomes a vested right from the date of its rendition and survives the death of the husband. Differing from a mere periodic allowance for current or continuous support, it is intended to effect a final termination of the property rights and relations of the parties, and is an approximate appraisal of the present value of the wife's *future support,* and, in a measure, a compensation for her loss of inchoate property rights in her husband's homestead and other estate, given to her by statute in case of her survival. * * *" 215 Ala., 583, 112 So. 192 (Emphasis supplied)

In Montgomery v. Montgomery, 275 Ala. 364, 366, 155 So.2d 317, 319, we observed:

"* * * But for alimony to be in gross it should be unequivocally expressed in the decree and it must meet and satisfy two requirements, i. e., (1) the time of payment and the amount must be certain; (2) the right to alimony must be vested."

See Le Maistre v. Baker, 268 Ala. 295, 105 So.2d 867. In the case last cited we said:

"It is to be noted that the phrase, 'as alimony', is used in the decree to describe the award being made. But as pointed out by the appellants in their brief, citing Eaton v. Davis, 176 Va. 330, 10 S.E.2d 893, 897, the word alimony comes from the Latin *alimonia,* meaning 'sustenance', and as applicable here, the sustenance or support of the wife by her divorced husband. It stems from the common-law right of the wife to support by her husband, which right, unless the wife by her own misconduct forfeits it, continues to exist even after they cease to live together. *Alimony has as its sole object the support of the wife, and is not to be considered a property settlement upon a dissolution of the marriage.'* (Emphasis supplied.) Eaton v. Davis, supra." (268 Ala. 298, 105 So.2d 870)

As we have shown, in her bill for divorce Madge Thompson prayed for temporary and permanent alimony and also prayed that the court "order and decree that respondent [Jack Thompson] assume and pay her personal obligations incurred for said Corporation [Aero Charter, Inc.]."

In the undated separation agreement, no mention is made of the payment of alimony by Jack Thompson to Madge Thompson. In Paragraph 2 of the separation agreement, Jack Thompson merely agreed to pay and assume "as his obligation and responsibility to pay all amounts owing creditors * * *" When construed in the light of the allegations of the bill for divorce, the prayer thereof, and the testimony adduced at the contempt hearing,

the creditors were those of Aero Charter, Inc., although Madge Thompson may have been personally obligated to pay some or all of the amounts owed those creditors.

We do not perceive how the payments which Jack Thompson agreed to make in Paragraph 2 of the separation agreement can be construed as being for the sustenance or support of Madge Thompson. Those payments were not to be made to her and they were not for necessaries.

It is the element of sustenance and support which excludes alimony, in gross or in installments, from the meaning of the word "debt" as used in § 20 of our Constitution, supra. The duty of a husband to support his wife is a higher duty than a mere contractual obligation, and, like the marriage contract, involves public interest and public policy. —Murray v. Murray, supra.

Thus, assuming contemptuous avoidance by Jack Thompson of an order of the trial court to pay to the creditors mentioned in Paragraph 2 of the separation agreement which, as we have heretofore shown, became a part of the divorce decree, we do not believe that Jack Thompson can be legally imprisoned for failure to comply with that order when it relates solely to the payment of a debt as distinguished from payments for the sustenance or support of his former wife, Madge Thompson.

Neither the decree of August 6, 1964, nor the separation agreement incorporated therein contains language which can be said to show unequivocally that alimony in gross was awarded to Madge Thompson.

In fact, the word "alimony" is not used in the instrument. And Paragraph 2 of the separation agreement does not show with certainty the total amount due each of the creditors named therein, and as to two of the named creditors there is no reference to the time when payment was to be made to them by Jack Thompson or the amount to be paid. —Montgomery v. Montgomery, supra.

Aero Charter, Inc., was a corporation owned by Jack Thompson and Madge Thompson as a business venture. The obligations which Jack Thompson agreed to pay were business debts incurred on behalf of Aero Charter, Inc. That portion of the separation agreement between Jack Thompson and Madge Thompson (Paragraph 2) as to who should pay the creditors of Aero Charter, Inc., was a business agreement or contract as opposed to domestic. As a contract to pay money it is not enforceable by imprisonment, in view of the provisions of § 20 of our Constitution, supra.

We hold that the trial court erred in holding Jack Thompson, the petitioner here, to be in contempt of court and ordering his imprisonment because of his failure to make the payments as provided in Paragraph 2 of the separation agreement.

The decree of the trial court is reversed and the cause is remanded, with directions that a decree be entered in accordance with this opinion.

Reversed and remanded with directions.

LIVINGSTON, C. J., and COLEMAN and KOHN, JJ., concur.