The plaintiff, Bank Independent ("the Bank"), appeals from a judgment entered on a jury verdict in favor of defendant Barbara Coats in this action seeking to set aside, as fraudulent, the assignments of a promissory note and a mortgage securing that note.[1] We affirm.
In Pennington v. Bigham, 512 So.2d 1344, 1346 (Ala. 1987), this Court set out the pertinent law dealing with fraudulent conveyances and assignments:
 "The law on fraudulent conveyances [and assignments] is expressed in § 8-9-6, Code 1975:
 " 'All conveyances or assignments in writing, or otherwise, of any estate or interest in real or personal property . . . made with intent to hinder, delay or defraud creditors, purchasers or other persons of their lawful actions, damages, forfeitures, debts or demands . . . are void.'
 "Thus, under the statute, the concurrence of three elements is necessary before a conveyance [or an assignment] can be declared fraudulent: (1) that the creditor *Page 58 
was defrauded; (2) that the debtor intended to defraud; and (3) that the conveyance [or assignment] was of property out of which the creditor could have realized his or her claim or some portion of it. However, in Granberry v. Johnson, 491 So.2d 926 (Ala. 1986), the Court noted:
 " 'In Smith v. Wilder, 270 Ala. 637, 120 So.2d 871 (1960), this Court further articulated some of the principles governing fraudulent conveyances [and assignments]. An existing creditor seeking to set aside a conveyance [or an assignment] may do so because of either actual fraud or constructive fraud. Actual fraud denotes the actual mental operation of intending to defeat or delay the rights of the creditor. On the other hand, constructive fraud is based on facts and circumstances which courts have said constitute legal fraud, regardless of actual intent. The term 'constructive fraud' is generally used to refer to those instances where a grantor, indebted at the time, conveys [or assigns] property without receiving valuable consideration. 270 Ala. at 649, 120 So.2d at 882. See also J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 841-42 (Ala. 1981).'
 "The Smith Court further stated that where one seeks to set aside a conveyance [or an assignment] because of constructive fraud, the complainant bears the burden of showing that his or her debt antedated the conveyance [or assignment]. When such proof is made, the burden shifts to the grantee to show that (1) the grantor owed a debt to the grantee; (2) the consideration for the conveyance [or assignment] was the extinguishment of the existing debt; and (3) the value of the property conveyed [or assigned] was no more than a fair equivalent for the debt amount. Smith v. Wilder, 270 Ala. at 650, 120 So.2d at 883. Conveyances [or assignments] of property between family members in the face of a pending suit against the grantor must undergo especially careful scrutiny.Reese v. Smoker, 475 So.2d 506 (Ala. 1985)."
See, also, J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834
(Ala. 1981).
The primary issue in the present case is whether the trial court erred in allowing the jury to consider whether the assignments of the note and mortgage to Barbara Coats by her former husband, Ellis Coats, were supported by an adequate consideration. The Bank contends that the assignments were not supported by any consideration and, therefore, that the trial court, as a matter of law, should have set the assignments aside under the theory of constructive fraud. The Bank points out that Ellis Coats, who was having financial problems and owed the Bank money at the time of the assignments, allegedly made the assignments for the purpose of satisfying his alimony and child support obligations, which had been previously established in the Coatses' divorce decree. The Bank maintains that Ellis Coats's alimony and child support obligations were not "debts" owed to Barbara Coats for satisfaction of which Barbara Coats could have legally accepted the assignments, and that Ellis Coats's child support obligation was not an obligation that could be the subject of a bargained-for exchange. Barbara Coats contends that the question concerning the adequacy of the consideration was one for the jury. We agree.
"Existing debt" is defined in Black's Law Dictionary 574 (6th ed. 1990), in pertinent part, as follows:
 "To have an 'existing debt' it is sufficient if there is an absolute debt owing though the period for its payment may not yet have arrived. . . . Within provision of Uniform Fraudulent Conveyance Act which defines 'insolvency,' an 'existing debt' is an existing legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent."
"Debt" is defined in Black's Law Dictionary at 403, in pertinent part, as follows:
 "A sum of money due by certain and express agreement. A specified sum of money owing to one person from another, *Page 59 
including not only obligation of debtor to pay but right of creditor to receive and enforce payment. . . .
 "A fixed and certain obligation to pay money or some other valuable thing or things, either in the present or in the future. In a still more general sense, that which is due from one person to another, whether money, goods, or services. In a broad sense, any duty to respond to another in money, labor, or service; it may even mean a moral or honorary obligation, unenforceable by legal action. Also, sometimes an aggregate of separate debts, or the total sum of the existing claims against a person or company."
Ellis Coats's obligations to make alimony and child support payments were fixed and certain obligations to pay, over a set period of time, money that was due by virtue of his responsibilities to Barbara Coats and his minor children. Those obligations, which were subject to judicial enforcement, fell squarely within the general definitions of "existing debt" and "debt," as those words are used in our cases dealing with fraudulent conveyances and assignments.[2] Furthermore, the law is clearly stated in Morgan v. Morgan, 275 Ala. 461, 464,156 So.2d 147, 150 (1963), as follows:
 "[P]arents are without any warrant in law to . . . nullify [a divorce] decree by mutual agreement between themselves so as to deprive [their] minor children of the support to which they are entitled
under the decree. . . . Such agreements are without consideration, and void as a matter of public policy."
(Emphasis added.) Although there was conflicting expert testimony presented, there was sufficient evidence from which the jury could have found that the present monetary value of the note and mortgage was sufficient to cover Ellis Coats's legal obligation to support his minor children. Therefore, based on the evidence presented, we cannot say that the assignments by Ellis Coats of the note and mortgage for the purpose of satisfying his child support obligation had the effect of depriving his minor children of the support to which they were entitled under the Coatses' divorce judgment. We hasten to point out, however, that although agreements of the kind entered into by Barbara and Ellis Coats that affect child support obligations may be sufficient to support a questioned conveyance or assignment, they should be the *Page 60 
subject of careful scrutiny by the courts and, should it become necessary, a parent who conveys or assigns property for the purpose of satisfying a child support obligation may be required to provide additional support in the future in an amount above the value of the property conveyed or assigned, notwithstanding the agreement. This is in keeping with the public policy of this state that parents cannot abrogate their responsibilities to their minor children by mutual agreement between themselves so as to deprive their minor children of the support to which they are legally entitled.
Because there was sufficient evidence presented in this case for the jury to find that the present monetary value of the note and mortgage was substantially equivalent to the present monetary value of Ellis Coats's legal obligations to support Barbara Coats and his minor children, the trial court did not err in submitting to the jury the question concerning the adequacy of the consideration.
The Bank also contends that the trial court erred in charging the jury that the issue concerning the adequacy of the consideration for the assignments of the note and mortgage had to be resolved based on "the value of the transfer as of the date of the transfer only." The Bank further contends that the trial court erred in refusing to give the following written requested jury instructions:
"PLAINTIFF'S REQUESTED JURY CHARGE NUMBER 20
 "When considering the value that the grantee, Barbara Coats, actually paid in this case, you may consider the amount she actually received from Ellis Coats, the amounts Ellis Coats would have had to pay to the date of her remarriage, the date of his death or the date of her death. In essence, you may actually consider what in fact occurred in order to determine the value she actually paid."
"PLAINTIFF'S REQUESTED JURY CHARGE NUMBER 30
 "Security for the value actually paid means that you must determine what Barbara Coats paid to Ellis Coats in exchange for the release of his marital obligations. In determining the value actually paid you may consider evidence of present value, cash payments actually made and facts and circumstances tending to prove such evidence."
The Bank argues in its brief that it "properly objected to the failure to give these charges, based on the 'equitable exception' that these valuations should have been the proper measure in determining the real values actually paid." The Bank's argument, as we understand it, is that under a general principle of equity the assignments in this case should have been allowed to stand, if at all, only as security for the amount of alimony and child support that Ellis Coats would have actually paid to Barbara Coats if he had not assigned the note and mortgage to her. In Reese v. Smoker, 475 So.2d 506, 509
(Ala. 1985), this Court, quoting J.C. Jacobs Banking Co. v.Campbell, supra, at 844, discussed the applicable equitable principle as follows:
 " '[W]hen the consideration, though valuable, is found to be substantially inadequate, and the grantee is without knowledge of the grantor's intent or of facts putting him on inquiry as to that intent, the conveyance will be allowed to stand only as security for the value actually paid.' "
The verdict form provided to the jury contained interrogatories that were apparently intended to enable the trial court to apply this equitable principle if the jury found the assignments to be fraudulent.[3] *Page 61 
In the present case, the trial court correctly instructed the jury that it had to place values on the note and mortgage and on Ellis Coats's alimony and child support obligations as of the date of the exchange. At the Bank's request, the jury was instructed that it could compute these values using either a "present value" method or a "simple cash flow" method, or a combination of both. Under the "simple cash flow" method, the jury was free to value Ellis Coats's alimony and child support obligations based on the actual amount that Ellis Coats would have paid to Barbara Coats had he not assigned the note and mortgage to her. The "simple cash flow" method was explained to the jury by the Bank's expert witness, and evidence of the payments that Ellis Coats would have actually made was admitted for the purpose of enabling the jury to apply that method. Consequently, it was unnecessary for the trial court to give the Bank's written requested instructions 20 and 30, the substance of those instructions having been fairly given to the jury in the trial court's oral charge. See Rule 51, Ala.R.Civ.P. Furthermore, these two requested instructions were confusing and misleading.[4] The trial court did not err in refusing to give the Bank's written requested instructions 20 and 30.
Finally, the dispositive factual question that had to be resolved by the jury in this case was whether the assignments of the note and mortgage were supported by an adequate consideration (i.e., whether the value of the note and mortgage was substantially equivalent to the value of Ellis Coats's alimony and child support obligations). The jury found that the assignments were supported by an adequate consideration and that they were not fraudulent; therefore, contrary to the Bank's contention, the trial court did not err in refusing to apply the equitable principle mentioned above. See Reese v.Smoker, supra.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] Ellis Coats was also named as a defendant; however, he was dismissed from the case at the close of the Bank's case in chief. Although the Bank appealed the dismissal of Ellis Coats, it later withdrew its argument with respect to that dismissal. Consequently, the propriety of the dismissal is not before us for review.
[2] The Bank's reliance on Ex parte Thompson, 282 Ala. 248,210 So.2d 808 (1968), and Ryan v. Ryan, 271 Ala. 243, 123 So.2d 102
(1960), in support of its contention that Ellis Coats's obligation to pay alimony was not a "debt" within the meaning of our cases dealing with fraudulent conveyances and assignments is misplaced. In Thompson, the issue was whether the petitioner's failure to pay certain debts that had been incurred by his former wife during the marriage, as he was required to do pursuant to a valid decree of divorce, was punishable by imprisonment for contempt of court. Holding that the petitioner's obligation to pay the debts could not be construed as an obligation to pay his former wife alimony, this Court held that the obligation was an ordinary debt and that § 20, Alabama Constitution of 1901, prohibited the petitioner's being imprisoned for failure to pay that debt. This Court noted in Thompson that an obligation to pay alimony is not considered to be a "debt" within the meaning of § 20, Alabama Constitution of 1901, which provides: "That no person shall be imprisoned for debt." In Ryan, where the issue was whether the husband was entitled to set off a portion of his alimony obligation against a debt owed to him by his former wife, this Court held that the husband's obligation to pay alimony to his wife was not a "debt" within the meaning of Title 7, § 350, Code of 1940, which provided that mutual debts, liquidated or unliquidated, demands not sounding in damages merely, subsisting between the parties could be set off one against the other. In both of these cases, the Court made it clear that an obligation on the part of a man to pay alimony to his former wife was not simply a contractual obligation, but was an obligation based upon considerations of equity and public policy. In Thompson, the Court noted: "The duty of a husband to support his wife is a higher duty than a mere contractual obligation, and, like the marriage contract, involves public interest and public policy."282 Ala. at 254, 210 So.2d at 813. In the present case, Ellis Coats assigned the note and mortgage to Barbara Coats for the purpose of satisfying his alimony obligation. This case is not like Thompson or Ryan in that this case does not involve a man who attempted to avoid the legal consequences of his alimony obligation by taking the legal position that that obligation was merely contractual in nature and thus, that it was an ordinary debt. Here, Ellis Coats apparently assigned the note and mortgage to Barbara Coats in recognition of his "higher duty" to her.
[3] The verdict forms read as follows:
"We the jury find as follows: (check which is your verdict)
"___ There was no fraudulent conveyance.
"___ There was a fraudulent conveyance. Further, we find:
 "1. Barbara Coats gave value of $ _________ for the promissory note and mortgage.
 "2. __________ Barbara Coats had notice of facts putting her on inquiry as to Ellis Coats's fraudulent intent.
 "___ Barbara Coats did not have notice of facts putting her on inquiry as to Ellis Coats's fraudulent intent."
[4] Both requested instructions refer to "value actually paid" by Barbara Coats, even though the evidence was undisputed that Barbara Coats did not "pay" anything to Ellis Coats in exchange for the assignments of the note and mortgage; she did accept the assignments for the purpose of satisfying Ellis Coats's alimony and child support obligations. In addition, both instructions refer to payments "actually received" by Barbara Coats, or to payments "actually made" by Ellis Coats, while also referring to payments that Ellis Coats "would have had to" make.