Ray Dolberry ("the husband") appeals from an order finding him in contempt of court and directing that he be "incarcerated in the Jackson County Jail every weekend commencing 28 August, 2004 from 8:00 a.m. to 5:00 p.m. the following Sunday with a like period of incarceration to occur each weekend pending further orders of this Court and until the [husband] purges himself from this contempt order." We reverse and remand. *Page 574 
The husband and Loria Dolberry ("the wife") were divorced on August 12, 2003. The final judgment of divorce incorporated the parties' settlement agreement. That agreement provided, among other things:
 "4. That the [husband] is hereby awarded the marital residence located at 129 Clemons Road, Scottsboro, Alabama 35769 for his sole and personal use and benefit and the [wife] is divested of any interest therein. The [husband] shall pay to the [wife] the sum of Fifteen Thousand Dollars ($15,000.00) for her equity in the home within 90 days from July 8, 2003.
 "5. The [wife] shall be awarded the 1992 Ford Eddie Bauer Explorer and the [husband] shall deliver the vehicle in good working condition to the [wife]. The [husband] shall execute the necessary documents to relinquish all rights and title to the 1992 Ford Eddie Bauer Explorer.
 "6. That the [husband] shall be awarded the 1985 Gold Mercedes and the [wife] shall deliver the vehicle in good working condition to the [husband]. The [wife] shall execute the necessary documents to relinquish all rights and titles to the 1985 Gold Mercedes."
(Emphasis added.)
On October 27, 2003, the wife filed a contempt petition, alleging that the husband had failed to comply with the divorce judgment by not paying her $15,000 within 90 days of July 8, 2003. The petition sought an adjudication of civil and criminal contempt, as well as an order requiring the husband to comply with the divorce judgment by paying her $15,000 and by delivering the Eddie Bauer Ford Explorer. On November 26, 2003, the husband filed an answer denying the allegations. The husband also filed a counter-petition for contempt, alleging that the wife had failed to deliver the 1985 Mercedes and had committed fraud by encumbering that vehicle's certificate of title. The parties agreed to submit the issues to the court for consideration on their affidavits.
On April 9, 2004, the court found the husband in contempt for failing to pay the $15,000. The court forewent levying sanctions against the husband so long as the husband paid the wife the $15,000 within 30 days. Additionally, the court ordered the parties to exchange the vehicles, in good working order and with clear title, at the Scottsboro Police Department on April 24, 2004.
It is undisputed that the parties did not exchange vehicles on April 24, 2004. On April 27, 2004, and on May 3, 2004, the husband filed pleadings pro se alleging that the Mercedes had not been delivered in working order and that the title to the Eddie Bauer Ford Explorer had been encumbered. On May 21, 2004, the husband filed another pro se pleading asking the wife to consider a settlement. This pleading alleged that the bank would not give him a loan to pay the $15,000 because of his poor credit. The husband proposed giving the wife a boat, a camper, and the Eddie Bauer Ford Explorer in exchange for the Mercedes in its existing condition.
On May 21 the wife filed a second petition for contempt, alleging that the husband had failed to tender the $15,000 and had failed to deliver the Eddie Bauer Ford Explorer as instructed. In her petition, the wife requested that the husband be found in contempt and ordered to produce the $15,000 and the Eddie Bauer Ford Explorer.
The trial court held another hearing on August 16, 2004. According to the husband's brief to this court, there was no court reporter present at the hearing and *Page 575 
no testimony was taken.[1] In its August 20, 2004, contempt order, the trial court noted:
 "After colloquy with the parties and counsel, the Court is satisfied that the [husband] has made no reasonable effort to purge himself from the contempt order issued herein on 9 April, 2004 and has no real intent to do so without intervention of the Court."
Thereafter, the court ordered that the husband be incarcerated each weekend from 8:00 a.m. on Saturdays until 5:00 p.m. Sundays "pending further orders of this Court and until the [husband] purges himself of this contempt order."
On appeal, the husband argues that § 20, Ala. Const. 1901, prohibits the trial court from incarcerating him for failure to pay a debt. Alternatively, the husband argues that he submitted evidence of his inability to pay and that the wife did not prove beyond a reasonable doubt that he had the ability to pay.
 "The standard of review in a civil contempt case was clarified by this court in Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App. 1994), as follows:
 "`[W]hether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.'"
Boykin v. Boykin, 659 So.2d 664, 666 (Ala.Civ.App. 1995).
In Ex parte Thompson, 282 Ala. 248, 210 So.2d 808 (1968), the Supreme Court held that the trial court had erred in holding a husband in contempt and ordering his imprisonment for failure to pay a debt pursuant to a separation agreement that had been incorporated into the judgment of divorce. In Thompson, the separation agreement provided that the husband would pay certain creditors. In regard to those payments, the Court stated:
 "We do not perceive how the payments which Jack Thompson agreed to make in Paragraph 2 of the separation agreement can be construed as being for the sustenance or support of Madge Thompson. Those payments were not to be made to her and they were not for necessaries.
 "It is the element of sustenance and support which excludes alimony, in gross or in installments, from the meaning of the word `debt' as used in § 20 of our Constitution, supra. The duty of a husband to support his wife is a higher duty than a mere contractual obligation, and, like the marriage contract, involves public interest and public policy. Murray v. Murray[, 84 Ala. 363, 4 So. 239 (1888)]."
Thompson, 282 Ala. at 254, 210 So.2d at 813. Because the payments were not for the sustenance and support of his former wife, § 20, Ala. Const. 1901, applied and Thompson could not be imprisoned for the failure to pay a debt. Id.
In Ex parte Parker, 334 So.2d 911 (Ala.Civ.App. 1976), this court reversed and remanded a finding that the former wife was in contempt for failure to pay $5,500 to her former husband for his interest in the marital home pursuant to a settlement agreement incorporated into a judgment of divorce. The terms of the agreement provided that the former wife pay her former husband $100 per month until the indebtedness was paid. The trial court found that the former wife had not made the payments, and it gave her one month to pay the arrearage or be incarcerated until *Page 576 
she purged herself of contempt. This court reviewed the agreement and stated:
 "Our examination of the agreement entered into by the parties hereto prior to the divorce decree and the testimony heard by the court at the rule nisi hearing convinces us that the transfer of property interest in exchange for the payment of a certain sum of money was either a simple business transaction, or, at most a property settlement upon dissolution of a marriage. Either view of the evidence compels us to say that a debt ex contractu was involved, the payment of which could not be coerced by a contempt citation. [Ex parte Thompson], 282 Ala. 248, 210 So.2d 808
[(1968)]; Ex parte Hardy, 68 Ala. 303 [(1880)]."
Ex parte Parker, 334 So.2d at 912. This court went on to say that had the award been considered alimony in gross, there may have been a different resolution, because an "award of alimony has as its sole object the support of the [the former spouse receiving the alimony] and is not to be considered a property settlement." Id. at 912. This court differentiated between a property settlement and alimony in gross, stating:
 "In the case at bar the intent of the agreement was for the wife to pay the husband for his interest in some property he was giving up, as evidenced by a note and mortgage, not to give support to the wife or to compensate her for her lost inchoate property rights as would be the case in the award of alimony in gross. This ordinary money obligation is not attended with any of those peculiar equitable considerations which attach to alimony. Therefore, the debt created by the agreement of the parties hereto is within the ambit of Section 20, supra, and is not subject to enforcement by contempt proceedings."
Id. at 913.
In Thomas v. Thomas, 406 So.2d 939 (Ala.Civ.App. 1981), a former husband and a former wife had been divorced and, pursuant to the judgment of divorce, the former husband was to pay child support, make the mortgage payments on the marital home for 12 months or until the former wife could return to work, and pay the debts incurred by the parties during marriage. The former wife filed a petition for contempt, alleging that the former husband was in arrears on his child-support obligation and on the mortgage payments. The former wife alleged that she had been notified of a pending foreclosure on the mortgage on the marital home and that she was therefore in danger of losing the home. The trial court found the former husband in contempt of court, but it suspended the 30-day sentence it imposed against the former husband on the condition that he purge himself of the contempt.
In Thomas, in regard to the mortgage payments, this court stated that if the duty to make the payments was construed as a debt, then the former husband could not be imprisoned to coerce payment. However, we held that if the duty to make the mortgage payments was alimony, then the trial court could use its contempt power to coerce payment. Thomas v. Thomas, 406 So.2d at 942. Due to the "contingent nature" of this payments, the court characterized the duty to make the mortgage payments as an alimony obligation. Because the mortgage payments were characterized as alimony, § 20, Ala. Const. 1901, was inapplicable. Id. at 942. This court went on to reverse the trial court's judgment and remand the case because the former husband had introduced evidence of his inability to pay and the former wife had failed to prove beyond a reasonable *Page 577 
doubt that the former husband did, in fact, have the ability to pay. Id. at 942.
In Evans v. Evans, 625 So.2d 438 (Ala.Civ.App. 1993), this court affirmed a finding of contempt and an order instructing that the former husband be imprisoned for 30 days or until he purged himself of the contempt. In Evans, the former husband was held in contempt for failure to pay to the former wife $7,500 as part of the property division. Although the former husband cited Ex parte Parker, supra, for the proposition that a contempt citation cannot be used to compel the payment of a property division, this court distinguished that case. In distinguishing Ex parte Parker, this court also distinguishedNull v. Null, 423 So.2d 887 (Ala.Civ.App. 1982), saying:
 "Our research also has revealed a situation similar to [Ex parte] Parker[, 334 So.2d 911
(Ala.Civ.App. 1976),] in Null v. Null, 423 So.2d 887 (Ala.Civ.App. 1982). In Null, this court held that it was error for a trial court to find a wife in contempt for a failure to pay certain of the parties' debts which she agreed to pay in a supplemental contract between the parties. In reversing the trial court, we stated that the agreement constituted "`either a simple business transaction, or, at most, a property settlement. . . . Either view of the evidence compels us to say that a debt ex contractu
was involved, the payment of which could not be coerced by a contempt citation.'" Id., at 888 (quoting [Ex parte] Parker[, 334 So.2d at 912]).
 "In both [Ex parte] Parker and Null, an agreement between the parties was involved, wherein one of the parties willingly assumed certain financial responsibilities. It was this contractual characteristic which gave rise to a debt ex contractu and which, therefore, precluded enforcement by a contempt citation. See, e.g., Ala. Const. art. I, § 20 (stating `[t]hat no person shall be imprisoned for debt')."
Evans v. Evans, 625 So.2d at 440. Because the judgment inEvans was not the result of an agreement between the parties, the court held that the obligation to pay the $7,500 property division, on which the finding of contempt was based, could be enforced by a contempt citation. See Bray v. State,140 Ala. 172, 37 So. 250 (1904); see also Ex parte Parker, supra.
In Smith v. Smith, 703 So.2d 418 (Ala.Civ.App. 1997), the judgment of divorce incorporated a separation agreement. The former husband agreed to assume "`full and complete responsibility for payment of any and all income tax liability presently owed by the parties jointly and/or by either of them individually for [several] tax years.'" Smith v. Smith,703 So.2d at 419. The former husband did not make the required payments. The former wife filed a contempt petition, but before there was a hearing, the former wife renounced the settlement agreement saying she had not consented to the settlement reached by her attorney. The former husband and the former wife reached a second settlement agreement, and the trial court entered an order that reflected the parties' agreement. The court found the former husband in contempt for failing to pay the tax debt, but it allowed the former husband 45 days to purge himself of that contempt. The former husband was unable to comply with the trial court's order, so the trial court ordered the former husband incarcerated, but it stayed the incarceration for 30 days.
 On appeal, the former husband argued "that a debt cannot be the subject of contempt proceedings and that the trial court erred when it imposed sanctions against him for his failure to pay a debt. The husband relies on Ala. Const. of 1901, Art. I, § 20 (`no person shall be *Page 578 
imprisoned for debt'); Null v. Null, 423 So.2d 887
(Ala.Civ.App. 1982); and Ex parte Parker, 334 So.2d 911 (Ala.Civ.App. 1976)."
Smith v. Smith, 703 So.2d at 420. However, in Smith, this court affirmed the finding of contempt because
 "[a]lthough the husband's obligation to satisfy the tax debt originated as an agreement between the parties, that agreement was incorporated into their divorce judgment. At that point, "`the judgment, and not the agreement itself, became the controlling enforceable instrument.'" Chappel v. Esty, 655 So.2d 1011, 1012 (Ala.Civ.App. 1995) (quoting Kaleta v. Kaleta, 452 So.2d 1338, 1339 (Ala.Civ.App. 1984)). Furthermore, the husband's obligations later became the subject of the September judgment that required him to take specific action within a certain time."
Smith v. Smith, 703 So.2d at 420.
In Smith, this court ultimately relied on a trial court's inherent power to punish the contemptuous failure to comply with its lawful orders to affirm the contempt finding. In support of this proposition, this court cited Chappel v. Esty,655 So.2d 1011 (Ala.Civ.App. 1995), Ex parte Boykin, 656 So.2d 821
(Ala.Civ.App. 1994), and Hill v. Moree, 602 So.2d 903
(Ala.Civ.App. 1992).
The language in Ex parte Boykin, upon which the Smith
decision relies, is merely dicta. In Ex parte Boykin, this court denied a petition for the writ of mandamus because, we held, a finding of contempt can properly be reviewed on appeal. This court merely "point[ed] out" to the father that a trial court has the inherent power to enforce its judgments. Ex parteBoykin, 656 So.2d at 828. Additionally, Hall v. Hall,485 So.2d 747 (Ala.Civ.App. 1986), which Ex parte Boykin cites in support of the above-mentioned proposition, dealt with the contemptuous failure to pay child support. Therefore, § 20, Ala. Const. 1901, was inapplicable.
In Hill v. Moree, supra, the father was held in contempt for failure to pay his child-support obligation. Like Ex parteBoykin and Hall, supra, Hill did not implicate § 20, Ala. Const. 1901, because, like alimony, child support is not considered a debt. See Ex parte Thompson, supra; see alsoWilson v. Freeman, 402 So.2d 1004 (Ala.Civ.App. 1981).
In Chappel v. Esty, supra, this court reversed the action and remanded the dismissal of a contempt petition. In Chappel, there was a settlement agreement that required the payment of "`$3,950.00 in full settlement of all marital claims and child support.'" Chappel v. Esty, 655 So.2d at 1012. This court noted the inherent authority of a court to enforce its orders and citedHill v. Moree, supra, in support of that proposition. Ultimately, in Chappel, this court stated:
 "The trial court made no finding on the issue of contempt because it concluded, erroneously, that it had no authority to make such a finding. Therefore, we reverse the trial court's judgment and remand the cause for the court to determine whether the husband should be held in contempt for his failure to comply with the judgment of divorce."
Chappel v. Esty, 655 So.2d at 1012. The trial court did not address whether or not the father was in contempt at all and that mandated the reversal in Chappel. That the trial court has the power to enforce its lawful orders was not dispositive, andChappel does not stand for that proposition as Smith, supra, suggests.
The facts in Smith, supra, were remarkably similar to those in Thompson, supra. Both cases involved a settlement agreement where one of the parties assumed the obligation to repay marital debts. In both *Page 579 
cases, the party that assumed the debt was to pay a third party, rather than the former spouse. In Thompson, the Supreme Court distinguished payments made for the purposes of sustenance and support from mere property settlements. Ex parte Thompson,282 Ala. at 253, 210 So.2d at 812-13. The former are not subject to the constitutional prohibition against imprisonment for a debt; the latter are subject to that provision. See id. Smith, which was erroneously affirmed, abolishes that distinction and, therefore, is in conflict with Thompson. We, therefore, overrule Smith.
In this case, the husband argues that he cannot be imprisoned for debt pursuant to § 20, Ala. Const. 1901. He is correct. The parties' marriage settlement agreement states: "The [husband] shall pay to the [wife] the sum of Fifteen Thousand Dollars ($15,000) for her equity in the home." In Thomas v. Thomas, supra, the former husband was ordered to pay mortgage payments on the marital home that the former wife was awarded for 12 months or until the former wife could return to work. In that case, this court recognized that those payments were for sustenance and support, and, therefore, outside the scope of § 20. Unlike the payments in Thomas, the payments in the case at hand are for the wife's equity in the house. The payments are more similar to those in Ex parte Parker and Null v. Null. The $15,000 payment is clearly a property settlement, as evidenced by the language in the settlement agreement "for her equity in the home." Therefore, the nonpayment of that debt is within the ambit of § 20, Ala. Const. 1901. Our resolution of this issue pretermits consideration of the husband's ability or inability to pay. Accordingly, we reverse and remand.
REVERSED and REMANDED.
PITTMAN and BRYAN, JJ., concur.
THOMPSON and MURDOCK, JJ., concur in the result, without opinion.
[1] The wife has not filed a brief with this court.